284 N.J. Super. 309 (1994)
664 A.2d 1301
STATE OF NEW JERSEY, PLAINTIFF,
v.
PEGGY EHRENBERG, DEFENDANT.
Superior Court of New Jersey, Law Division Bergen County.
Decided April 19, 1994.
*311 John J. Fahy, Bergen County Prosecutor (Phillip La Porta, Law Clerk, appearing for the State).
Albert F. Carilli, for defendant.
KOBLITZ, J.S.C.
This case raises the novel issue of whether an individual who has been charged with a disorderly persons offense and does not face "consequences of magnitude," may nonetheless be entitled to a court appointed attorney where the individual's mental state raises an issue as to her competency to adequately protect her rights at trial.
The defendant was convicted in Englewood Municipal Court of one count of harassment, in violation of N.J.S.A. 2C:33-4.[1] Defendant, who had no prior criminal convictions of any kind, was sentenced to a suspended $500 fine, $21 costs, $50 Violent Crimes *312 Compensation Board penalty and one year of probation, with the special condition that she continue under a course of treatment as prescribed by her psychiatrist.
Defendant appeared for trial in the municipal court without counsel. When the municipal judge asked her whether she was represented by an attorney, defendant responded that she had recently been hospitalized. She went on to relate that while in the hospital, she transferred her legal representation to a lawyer who works for the Mental Health Law Project[2] who, according to the defendant, refused to come to court. Defendant then stated that she was in the process of moving and had neither the time nor the money to obtain another attorney. She also volunteered a complaint to the court that her gold necklace was missing as a result of the incident in question. She stated that the doctor who had told her to change attorneys was dead, and also asked the court to dismiss the charges because her first name is Peggy, not Margaret (as typed on the criminal complaint). When the court attempted to explain the charges against defendant, she began to laugh. Defendant's demeanor, together with her responses to the court, clearly demonstrated distorted thinking, and suggested a history of mental illness.
The municipal court reviewed the holding of Rodriguez v. Rosenblatt, 58 N.J. 281, 277 A.2d 216 (1971), and determined that since defendant did not face "consequences of magnitude," the court would not appoint an attorney to represent her. The municipal judge offered to adjourn the case for one week to permit defendant to retain counsel, but defendant responded that she was "prepared to try the case today." Rather than make further inquiry into defendant's mental state, the court permitted the trial to commence.
*313 The evidence revealed that the Englewood police arrived at defendant's apartment to find her in the hallway, rubbing two large carving knives together as if to sharpen them, while stating obscenities and threatening to stab the police officers and cut off the head of the building superintendent. She claimed that the police were after her. She then retreated into her apartment bathroom. The police officer followed her and grabbed her after she dropped the knives.
Defendant was taken by the police to Englewood Hospital for a psychiatric evaluation. No evidence of the results of any psychiatric evaluation was presented at trial. An officer testified that she was extremely upset, agitated, and combative, and that he could not determine whether or not she was aware of what was taking place at the time of the incident. Defendant testified at trial that she was supposed to be taking psychotropic medication at the time of the incident.
Both during the initial exchange between the judge and defendant, and as the trial proceeded, defendant's demeanor and behavior raised a bona fide doubt as to her competence to stand trial. See discussion in State v. Cecil, 260 N.J. Super. 475, 480-87, 616 A.2d 1336 (App.Div. 1992), certif. denied, 133 N.J. 431, 627 A.2d 1138 (1993). When a question arises as to a defendant's competence to proceed to trial, a competency evaluation should ordinarily be performed, after which the State has the burden of establishing competency by a preponderance of the evidence. State v. Lambert, 275 N.J. Super. 125, 128-29, 645 A.2d 1189 (App.Div. 1994). The precise standards of competency are found in N.J.S.A. 2C:4-4b.
However, even if, after an appropriate inquiry, the trial judge had found no bona fide doubt as to the defendant's competency to stand trial in this case (and the standard for competency is extremely low, See Cecil, supra), the question of whether she was competent to proceed pro se would still need to be answered.
*314 Traditionally, courts have ruled that even though a person is competent to stand trial, he or she may not have the mental capacity to knowingly waive the right to counsel. See State v. Guerin, 208 N.J. Super. 527, 532-33, 506 A.2d 743 (App.Div. 1986); State v. Khan, 175 N.J. Super. 72, 82-83, 417 A.2d 585 (App.Div. 1980). Furthermore, even though the defendant here unequivocally said she was ready to proceed to trial pro se, the municipal judge did not make a penetrating and comprehensive examination of all the circumstances as would ordinarily be necessary if she were entitled to an attorney as a matter of law and wished to proceed pro se. State v. Crisafi, 128 N.J. 499, 510-12, 608 A.2d 317 (1992).
Defendant was thus unaware of the pitfalls inherent in self-representation, and, without full and complete knowledge, she could not effectively waive counsel. It is unclear whether, had she been informed of the dangers of self-representation, she could have exercised reasonable judgment given her mental condition.
Given defendant's display of bizarre and inappropriate comments and behavior in response to initial questioning by the court, a more thorough inquiry into defendant's desire to proceed without counsel might have conclusively demonstrated to the municipal court the need for an independent evaluation of defendant prior to commencing the trial. In addition, if defendant had the assistance of counsel, she would have been able to raise an insanity and/or diminished capacity defense (pursuant to N.J.S.A. 2C:4-1 and -2) as might be appropriate due to her history of psychiatric problems and apparent mental state at the time of the incident.[3]
The importance of the role of counsel in alerting the court to the possibility of a defendant's incompetence has long *315 been recognized. State v. Lambert, 275 N.J. Super. 125, 129, 645 A.2d 1189 (App.Div. 1994) (citing Drope v. Missouri, 420 U.S. 162, 177 n. 13, 95 S.Ct. 896, 906 n. 13, 43 L.Ed.2d 103, 116 n. 13 (1975)). In fact, defense counsel is ordinarily "in far better position than the trial judge to assay the salient facts concerning the defendant's ability to stand trial and assist in his own defense." State v. Lucas, 30 N.J. 37, 74, 152 A.2d 50 (1959). Likewise, defense counsel is in a better position to alert the court when a mentally ill defendant is competent to stand trial, yet not competent to proceed pro se. When a bona fide doubt is raised as to the competence of a mentally ill defendant to proceed pro se, counsel should be appointed to aid in the competency determination, as well as to assist the defendant in trying the case.
Where a defendant demonstrates a history of psychiatric problems and a current thought disorder, creating a reasonable basis to question his or her competency to stand trial or to raise a defense centering on mental condition, the court is obligated to conduct a further inquiry either by appointing counsel or directing that a psychiatric examination be conducted. Under such circumstances, it is irrelevant that a defendant is not facing a "consequence of magnitude" and is therefore ordinarily not entitled to appointment of counsel. A municipal court should not permit a clearly mentally ill defendant charged with a disorderly persons offense to proceed pro se, even absent the possibility of imposing "consequences of magnitude." Such a defendant should be assigned an attorney, even if by providing counsel he or she is given greater protection than that afforded to a defendant without a psychiatric disability.
It is important to recognize that even if, after appropriate evaluation, a defendant is found competent to stand trial, it may still be necessary for a municipal court to appoint counsel to represent a mentally disabled individual in order to safeguard the full panoply of civil rights to which the defendant is entitled. See, e.g., State v. Khan, supra, discussing the right to assert an insanity or diminished capacity defense. Thus, while a determination *316 of incompetency suspends the trial proceedings before the court, N.J.S.A. 2C:4-6b, a determination of competency should not ordinarily result in permitting a mentally ill defendant to conduct his or her own defense.
Even if competent to stand trial, a mentally ill defendant may nonetheless be incompetent to waive certain rights, such as to assert an insanity or diminished capacity defense. State v. Khan, supra at 82-83, 417 A.2d 585. See also State v. Cecil, supra at 479-80, 616 A.2d 1336. Where the facts and attendant circumstances suggest that such a defense is possible, the trial judge must undertake to determine that the defendant is aware of the defense and has made a knowing, intelligent and voluntary waiver of that defense. State v. Khan, supra at 83, 417 A.2d 585. The inquiry should be in terms of the "defendant's awareness of his rights and available alternatives, his comprehension of the consequences of failing to assert the defense and the freeness of the decision to waive the defense." Id. at 82, 417 A.2d 585.
A mentally ill defendant has needs beyond those of other citizens. Just as a deaf defendant would be provided with a sign-language interpreter, N.J.S.A. 34:1-69.10, or a non-English speaking defendant with a foreign language interpreter, State v. Kounelis, 258 N.J. Super. 420, 609 A.2d 1310 (App.Div. 1992), certif. denied 133 N.J. 429, 627 A.2d 1136 (1993)[4], the mentally ill defendant should be provided with counsel to allow full access to the courts.
The mentally ill defendant requires legal representation to communicate with the court and gain complete access to the court system. Under New Jersey civil rights legislation and the Federal *317 "Americans with Disabilities Act" the courts are required to ensure equal access to handicapped individuals, including those with psychiatric disabilities.[5]
The extent of mental illness from which an individual suffers is difficult to quantify. A mentally ill person may also deny to the court that such a disability exists. However, when, as here, the defendant's mental illness is readily apparent to the judge, and the defendant is facing more than a minor traffic infraction, the judge must err, if at all, on the side of protection of the defendant's civil rights.
Procedurally, in circumstances such as those presented in this case, the court could order a competency evaluation to determine whether the defendant is competent to stand trial. Even if such a determination established the defendant's competency to stand trial, additional issues would remain to be resolved. Thus, a more prudent procedure would be to appoint an attorney to represent the defendant in those cases where the defendant's mental condition *318 could reasonably be said to interfere with the defendant's present ability to go forward with pro se representation. The appointed attorney would be in a better position than the judge to gauge whether a competency evaluation would also be necessary. See State v. Lucas, supra.
It is anticipated that circumstances warranting such protection will be rare, and limited to those cases where, from the outset, the defendant presents behavior which objectively suggests that either the defendant is not competent, or that the defendant is unable to present an appropriate defense in circumstances where the defendant's mental state raises the possibility of such a defense.
The case is reversed and remanded for a new trial to allow the defendant to be represented by counsel. Although this was a de novo review, given the holding that the defendant's rights were prejudiced, a remand is appropriate. R. 3:23-8(a). The defendant was represented by retained counsel on appeal. Thus it is not necessary that a lawyer be appointed by the municipal court absent any further indication by the defendant of her inability to afford counsel.
NOTES
[1] Three other charges of disorderly conduct: creating a dangerous condition, in violation of N.J.S.A. 2C:33-2a(2), resisting arrest, in violation of N.J.S.A. 2C:29-2 and harassment, in violation of N.J.S.A. 2C:33-4 were merged by the court into that one conviction.
[2] The Mental Health Law Project is a government funded organization, located in Paramus, New Jersey, which provides legal services to indigent people with a protracted history of chronic mental illness.
[3] Illustrative of the necessity of counsel is proposed R. 7:7-5(a) which would require written notice to be served on the prosecuting attorney prior to trial of the intention to raise an insanity or diminished capacity defense. Without the assistance of counsel, it is unlikely that a mentally ill defendant would be able to comply with such a procedure.
[4] While N.J.S.A. 2B:8-1 only requires that counties provide interpreting services for cases in the Law Division and Family Part, the Appellate Division held in Kounelis, supra, that a defendant in a criminal case has the right to the assistance of an interpreter in order to understand the nature of the proceedings. This constitutional right extends to a defendant in a disorderly persons criminal proceeding.
[5] All persons shall have the opportunity to obtain employment, and to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation, publicly assisted housing accommodation, and other real property without discrimination. [N.J.S.A. 10:5-4]

All of the provisions of the act to which this act is a supplement shall be construed to prohibit any unlawful discrimination against any person because such person is or has been at any time handicapped. [N.J.S.A. 10:5-4.1]
"Handicapped" means suffering from ... any mental, psychological or developmental disability resulting from anatomical, psychological, physiological or neurological conditions which prevents the normal exercise of any bodily or mental functions or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques. [N.J.S.A. 10:5-5q] The term "disability" means, with respect to an individual  (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. [42 U.S.C.A. § 12102(2)] Subject to the provisions of this [title], no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. [42 U.S.C.A. § 12132]