**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1232-23

WOODBRIDGE NJ HOLDINGS,
LLC,

      Plaintiff-Respondent/
      Cross-Appellant,

v.

WHIBY 13 WOODBRIDGE, LLC,

      Defendant-Appellant/
      Cross-Respondent.

_____

Argued May 13, 2025 – Decided June 3, 2025

Before Judges Chase and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. LT-005021-20.

Andrew J. Kelly argued the cause for appellant/cross-respondent (The Kelly Firm, PC, attorneys; Andrew J. Kelly, of counsel; Nicholas D. Norcia, on the briefs).

Ryan W. Federer argued the cause for respondent/cross-appellant (Windels Marx Lane &

Mittendorf, LLP, attorneys; Ryan W. Federer, on the briefs).

PER CURIAM

This appeal stems from two landlord-tenant court orders entered after a summary-dispossess trial, finding WHIBY 13 Woodbridge, LLC (Tenant) owed Woodbridge NJ Holdings, LLC (Landlord) rent and additional rent totaling $196,669.16 plus $38,462.60 in attorneys' fees and costs under a commercial lease (the Lease) for a gym located in Woodbridge, New Jersey (the Leased Premises). We affirm in part and vacate in part, discerning no error in the finding that Tenant owed $196,669.16 under the Lease. We vacate the counsel fee award in favor of the Landlord, remanding for the landlord-tenant court to make the necessary findings of fact and conclusions of law pursuant to Rule 1:7-4 and Rule of Professional Conduct (RPC) 1.5.

I.

We glean the following facts from the record. The Lease set forth the base rent due from Tenant to Landlord, providing in years one through five, the annual minimum rent was $291,200, payable in monthly installments of $24,266.67. Tenant was also liable for additional rent under the Lease, including common area maintenance and certain utility charges.

During the first ten months of the Lease, Tenant was responsible for performing "Tenant's Work" to the Premises and had no payment obligation to Landlord. Tenant's rent and additional rent liability to Landlord commenced August 1, 2018.

Upon completion of Tenant's Work, Landlord was responsible for paying a "Tenant's Allowance," as set forth in Section 4.02:

> If and when (i) Tenant's Work shall have been completed in accordance with the plans and specifications approved by Landlord; . . . . then, when and if each condition contained in the foregoing items (i) through (vi), inclusive, hereof shall have been complied with in full, Landlord shall pay to Tenant up to the sum of Seven Hundred Thirty Thousand and 00/100 ($730,000.00) Dollars . . . as reimbursement for the actual cost of Tenant's leasehold improvements comprising Tenant's Work as and for "Tenant's Allowance[.]" <u>Provided that . . . Tenant is not in monetary default under this Lease after notice and the expiration of any applicable cure period</u> . . . . Tenant's Allowance, together with interest at the rate of five (5%) percent per annum on the unpaid balance of Tenant's Allowance from and after the Rent Commencement Date, shall be paid to Tenant in six (6) equal annual installments (plus interest as aforesaid) . <u>If Landlord fails to pay Tenant an installment of the Tenant's Allowance within ten (10) days after Landlord's receipt of written notice from Tenant that such installment is past due, then, as its sole remedy, Tenant shall have the right to offset such amount against the Minimum Rent payable by Tenant hereunder.</u> Notwithstanding the foregoing, Landlord shall have the right to elect, at any time at its sole option, to pay the entire outstanding amount of Tenant's

Allowance to Tenant. Tenant hereby expressly grants to Landlord an offset and deduction against Tenant's Allowance for all costs, payments and expenses Tenant is obligated to pay to Landlord pursuant to this Lease or otherwise due and owing to Landlord, at the time an installment of Tenant's Allowance shall be due or at the time Landlord otherwise elects to pay the Tenant's Allowance. Tenant shall be responsible and hereby agrees to pay all costs of Tenant's Work in excess of Tenant's Allowance . . . .

[(emphasis added).]

The definition of default in Section 17.01, included where:

(1) Tenant shall fail, neglect or refuse to pay any installment of Minimum Rent or additional rent at the times and in the amounts provided in this Lease . . . .

. . . .

Then in any of such events identified in items (1) through (8) . . . Tenant shall be in default . . . . In determining the rent which would be payable by Tenant hereunder subsequent to default during the residue of the Term, the rent for each year and month of the unexpired term shall be equal to the Minimum and Additional Rents of this Lease to be payable during such period.

[(emphasis added).]

Section 17.01 also stated that Tenant agrees, in the event of one of the default situations listed, "to pay to Landlord all reasonable costs and expenses, including reasonable attorneys' fees incurred by Landlord to repossess the

4

Premises or recovering sums due hereunder . . . ."    Section 17.06 also contained

a specific provision for the award of attorneys' fees in an action to recover

possession, which provided:

> In the event suit shall be brought by Landlord for recovery of possession of the Premises . . . <u>Tenant shall pay to Landlord all legal costs and other reasonable attorneys' fees and expenses</u> incurred by Landlord in connection therewith . . . .

> [(emphasis added).]

In April and June 2020, Landlord sent Tenant notices of default based on

its failure to pay monthly rent for April, May and June 2020.  Tenant did not

cure the default.

On July 21, 2020, Landlord filed a verified complaint seeking a judgment

of possession against Tenant for non-payment of rent and additional rent through

a summary-dispossess action filed in the Superior Court, Special Civil Part,

Landlord-Tenant Division, together with costs and attorneys' fees.  The parties

disagreed on the amount of rent and additional rent, if any, owed since Tenant

sought an offset against its monetary obligations under the Lease for the period

April through August 2020 based on the August 1, 2020 Tenant's Allowance it

claimed Landlord owed.

After the summary-dispossess trial was concluded, the landlord-tenant

court issued its decision, finding Tenant was not entitled to the requested offset

for the unpaid 2020 Tenant's Allowance pursuant to Section 4.02, since it was in breach of the Lease by failing to pay rent and additional rent due and owing. The court ruled in favor of Tenant on the interest payments Landlord sought under Section 17.03, finding the amount Landlord requested was not sufficiently proven and was in excess of what was allowable under the Lease and New Jersey law. Tenant was ordered to "post the $196,669.16 that was more or less conceded," with a judgment of possession to be entered in the event the entirety of the funds were not deposited with the court or paid directly to Landlord.

The landlord-tenant court subsequently set forth the following findings, in part, in a written order:

> 1. Because [Tenant] is in breach of the [L]ease due to nonpayment of five months of rent, [Tenant] is not due any refund of [Tenant's Allowance] . . . and
>
> . . . .
>
> 3. The amount of interest charges claimed by [Landlord] appears to exceed the amount of interest permitted by law, so the [c]ourt will accept the [Tenant's] interest calculations; and
>
> . . . .
>
> IT IS ORDERED that based on the findings and determinations set forth above:

1. [Tenant] is directed to deposit with the Court $196,669.16 . . . no later than the close of business November 30, 2021; and

. . . .

3. If [Tenant] does deposit $196,669.16 with the [c]ourt by November 30, 2021, the [Landlord] may submit a certification of counsel fees collectible as additional rent and both parties may file motions for reconsideration . . . .

Tenant deposited $196,669.16 with the court. Landlord filed a certification seeking counsel fees. Tenant moved for reconsideration of the landlord-tenant court's order fixing the amount Tenant owed and also sought "a determination . that there is still money owed to [Tenant] for [Tenant's Allowance] . . . for the years [2019], [2020] and [2021] . . . ."

The landlord-tenant court ultimately denied Tenant's reconsideration motion and denied Tenant's motion for a declaratory judgment as to the amount of Tenant's Allowance due, finding it lacked jurisdiction to rule on this issue since it could only enter a judgment for possession or dismiss the case. The landlord-tenant court granted Landlord's "motion to disburse funds that have been deposited with the court."

Landlord's request for attorneys' fees was granted in part, with the landlord-tenant court explaining the services were rendered and the costs were

A-1232-23

fair, but determining the hourly rates were "a little high," causing it to reduce the fee award from the $65,798.68 sought to $38,462.60. The trial court entered the following order:

> [Landlord] is awarded counsel fees in the amount of $38,462.60 . . . . If this amount is paid to [Landlord] and no appeal has been filed, the complaint will be dismissed; and
>
> The $196,669.16 now on deposit with the [c]ourt shall be disbursed to [Landlord]. This portion of the [o]rder is stayed until November 30, 2023, in the event [Tenant] wishes to appeal. Further stays must be sought from the Appellate Division.

Tenant ultimately paid Landlord the attorney fee award of $38,462.60 directly by check, and the court clerk subsequently disbursed the $196,669.16 to Landlord.

Tenant appealed all orders entered by the landlord tenant court and Landlord cross-appealed as to the award of counsel fees only.

II.

A.

We are unconvinced Tenant's appeal is moot because the amount of rent arrears has been paid and Landlord is no longer seeking possession. "Courts normally will not decide issues when a controversy no longer exists, and the disputed issues have become moot." Betancourt v. Trinitas Hosp., 415 N.J.

Super. 301, 311 (App. Div. 2010). "A case is technically moot when the original issue presented has been resolved, at least concerning the parties who initiated the litigation." Ibid. (quoting DeVesa v. Dorsey, 134 N.J. 420, 428 (1993) (Pollock, J., concurring)). However, "an issue is [also] moot when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy." Greenfield v. N.J. Dep't of Corr., 382 N.J. Super. 254, 257-58 (App. Div. 2006) (internal quotation marks omitted).

The parties both appeal the landlord-tenant court's findings as to the amount Tenant was required to pay to avoid eviction, albeit on different grounds. Since our disposition affects the amounts the landlord-tenant court ordered Tenant to pay to avoid eviction, we decline to find the appeal moot and proceed to analyze the issues before us.

## B.

We discern no error in "the trial judge's ruling that no offset of the rent against [Tenant's Allowance] was available while [Tenant] was 'in breach,'" concluding the landlord-tenant court did not misconstrue the Lease. Reading Sections 4.02 and 17.01 in harmony, Tenant was not entitled to have its monetary obligations to Landlord offset by Tenant's Allowance because it was in default at the time of trial, having failed to pay the full amount of rent and additional rent owed to Landlord under the terms of the Lease.

9

In a summary-dispossess action based on non-payment of rent, the landlord-tenant court determines the amount due and owing for purposes of avoiding eviction by "fixing [the] rent due," which "serves the purposes of the landlord by creating a finite sum that, if paid by the tenant, will be made available to the landlord to bring the tenant's rent current." Green v. Morgan Props., 215 N.J. 431, 449-50 (2013). "[F]ixing the rent . . . is a crucial step in the process of entering a judgment of possession." Id. at 450.

Here, the landlord-tenant court fixed the amount Tenant owed under the Lease, finding its obligations to pay rent and additional rent to Landlord could not be offset by Tenant's Allowance in the summary-dispossess action since the Tenant was in default. As of the trial date, Tenant was in monetary default of its obligations to pay Landlord pursuant to Section 17.01 of the Lease for the period April to August 2020. As such, Tenant was not entitled to have its monetary obligation to Landlord offset since the Tenant's Allowance under Section 4.02 is only payable by Landlord "[p]rovided that . . . Tenant is not in monetary default under this Lease after notice and the expiration of any applicable cure period . . . . " Because Section 4.02 conditions Landlord's payment of the Tenant's Allowance on the Tenant being current with its monetary obligations under the Lease and Tenant was in default at the time of trial, the landlord-tenant court did not err in denying Tenant's requested offset.

A-1232-23

Tenant's assertion that it was contractually entitled to have the Landlord apply Tenant's Allowance to its outstanding monetary obligations as of the date of trial is unconvincing. Tenant relies on Section 4.02 which contains language providing the Tenant with the sole remedy of electing to have its future monetary obligations under the Lease satisfied by an unpaid Tenant's Allowance, should Landlord fail to pay. A reading of the entirety of Section 4.02 shows that Tenant's sole remedy can be exercised only where it is not in monetary default and Landlord then fails to remit the Tenant's Allowance. That remedy was unavailable to the Tenant as of the summary-dispossess trial based on Tenant's default.

Tenant's request for the landlord-tenant court to determine the Landlord's obligation to pay the Tenant's Allowance once it cured the monetary default by paying the amount fixed to avoid the entry of a judgment of possession exceeds the jurisdiction of the landlord-tenant court. The landlord-tenant court's "jurisdiction is limited to determining the issue of the landlord's right to possession . . . ." Daoud v. Mohammad, 402 N.J. Super. 57, 61 (App. Div. 2008); Raji v. Saucedo, 461 N.J. Super. 166, 170 (App. Div. 2019) (concluding judgments of money damages cannot be entered in a summary-dispossess action). Landlord's obligation, if any, to pay the Tenant's Allowance is a dispute

to be adjudicated in a separate Law Division action, to the extent the parties cannot otherwise resolve the issue.

We offer no opinion as to whether the Tenant's monetary default at the time of the summary-dispossess trial is tantamount to a permanent forfeiture of any installment payment of the Tenant's Allowance. We likewise decline to circumscribe the res judicata effect, if any, of the landlord-tenant court's findings. Such a determination would be purely advisory, without a trial court record on this issue before us to review. See Big Smoke LLC v. Twp. of W. Milford, 478 N.J. Super. 203, 215 (App. Div. 2024); Scott v. Salerno, 297 N.J. Super. 437, 447 (App. Div. 1997) ("Appellate courts can consider a case only to the point at which it had been unfolded below . . . [and therefore our review] is confined to the record made in the trial court, . . . and appellate courts will not consider evidence submitted on appeal that was not in the record before the trial court . . . .") (internal citation omitted).

## C.

Our affirmance of the landlord-tenant court's fixing of the rent and additional rent due and owing at the time of trial also disposes of Tenant's appeal of the counsel fee award to Landlord. However, Landlord's cross-appeal remains, with Landlord arguing the landlord-tenant court "inappropriately cut the hourly rates of each of Landlord's attorneys and paralegals based on his own

personal view that these rates were 'a little high'" and that it should have been awarded the entire $65,798.68 fee sought.

Our deferential review of a landlord-tenant court's award of fees and costs is well established, and "[s]uch an award 'will be disturbed only on the rarest occasions, and then only because of a clear abuse of discretion.'" Hansen v. Rite Aid Corp., 253 N.J. 191, 211-12 (2023) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). Rule 4:42-9(b) provides "all applications for the allowance of fees shall be supported by an affidavit of services addressing the factors enumerated by RPC 1.5(a)." When calculating the amount of reasonable attorneys' fees, landlord-tenant courts must determine the lodestar, Rendine, 141 N.J. at 334-35, while also considering the factors set forth in RPC 1.5(a).[1]

Here, the landlord-tenant court did not analyze each of the RPC 1.5 factors when considering Landlord's counsel fee application. Instead, the court found only that Landlord's attorneys' fees "were a little high," without providing

---

[1] The RPC 1.5 factors include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

A-1232-23

further reasoning to support its findings as to counsels' and paralegals' hourly rates. As such, we vacate the order granting Landlord attorneys' fees in the amount of $38,462.60, and remand to the landlord-tenant court to set forth a factual basis for its conclusions, including analysis of the RPC 1.5(a) factors in compliance with Rule 1:7-4 and Rule 4:42-9.

Affirmed in part. Vacated and remanded in part for further proceedings consistent with this decision. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division